# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| JEREMIAH GAMBLE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Cv. No. 16-02527 |
| ) | Cr. No. 14-20171 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |
| ) | |

## ORDER

Before the Court is Petitioner Jeremiah Gamble's November 15, 2016 amended pro se motion seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (the "Amended § 2255 Motion").  (ECF No. 11.)[1]  Gamble filed a supplement to the Amended § 2255 Motion on December 1, 2016, adding new grounds for relief.[2]  (ECF No. 12.)  The government responded to the Amended § 2255 Motion on January 17, 2018.  (ECF No. 25.)  Also before the Court is Gamble's August 26, 2019 pro se motion to

---

[1] Citations to (Cr. ECF No. ##) refer to the criminal case United States v. Gamble, No. 2:14-cr-20171-SHM-18 (W.D. Tenn.).  Citations to (ECF No. ##) refer to this civil case, Gamble v. United States, No. 2:16-cv-02527-SHM-tmp (W.D. Tenn.).

[2] Gamble filed a second supplement to the Amended § 2255 Motion on December 11, 2019.  (ECF No. 31.)  That supplement does not state new grounds for relief.  It provides additional analysis of the grounds for relief stated in the Amended § 2255 Motion.  (See generally id.)

amend his Amended § 2255 Motion (the "Motion to Amend"). (ECF No. 30.) On December 11, 2019, Gamble supplemented the Motion to Amend with his proposed amended pleading. (ECF No. 32.)

For the following reasons, Gamble's Amended § 2255 Motion and Motion to Amend are DENIED.

## I. Background

On January 29, 2015, a federal grand jury in the Western District of Tennessee returned a twelve-count fourth superseding indictment against numerous defendants, including Gamble. (Cr. ECF No. 303.) The indictment charged Gamble with one count of conspiracy to possess with intent to distribute, and to distribute, cocaine, in violation of 21 U.S.C. § 846. (Id. ¶¶ 1, 19.) On July 10, 2015, Gamble pled guilty to the offense charged pursuant to a plea agreement. (Cr. ECF Nos. 460-61.)

The United States Probation Office prepared a Presentence Investigation Report (the "PSR"). (Jan. 29, 2016 Revised PSR, Cr. ECF No. 1002.) The PSR calculated Gamble's recommended sentencing range under the 2014 edition of the United States Sentencing Commission Guidelines Manual (the "U.S.S.G." or the "Guidelines"). (Id. ¶ 24.) Gamble's base offense level was 24. (Id. ¶ 25.) He was subject to a two-level enhancement for possession of a dangerous weapon during commission of the offense. (Id. ¶ 26.) Gamble's adjusted offense level was 26. (Id. ¶ 30.)

Gamble was a career offender under U.S.S.G. § 4B1.1 and subject to a further sentencing enhancement. (Id. ¶ 31.) The PSR identified two prior felony convictions of a crime of violence or a controlled substance offense: (1) a 2005 Tennessee conviction for possession of cocaine with intent to manufacture, sell, or deliver; and (2) a 2011 Tennessee conviction for aggravated assault. (Id. ¶¶ 31, 40, 51.) Gamble's offense level was 32 based on his career offender status. (Id. ¶ 31.) The offense level was reduced three levels to 29 for acceptance of responsibility. (Id. ¶¶ 32-34.) Gamble's criminal history category was VI. (Id. ¶ 58.) Based on his total offense level of 29 and his criminal history category of VI, Gamble's recommended Guidelines range was 151-188 months. (Id. ¶ 90.)

On March 3, 2016, Gamble was sentenced. (Cr. ECF No. 790.) The Court adopted the PSR without objection. (Id.) Gamble was sentenced to 151 months in prison and 3 years of supervised release. (Cr. ECF No. 792 at 2-3.) Gamble did not appeal his conviction or his sentence.

On June 28, 2016, Gamble filed a pro se motion seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (the "Initial § 2255 Motion"). (ECF No. 1.) In the Initial § 2255 Motion, Gamble sought relief only under Johnson v. United States, 135 S. Ct. 2551 (2015). On September 22, 2016, the government responded to the Initial § 2255 Motion. (ECF No. 7.)

On November 15, 2016, Gamble filed the Amended § 2255 Motion, which asserted non-<u>Johnson</u> grounds for relief. (ECF No. 11.) On December 1, 2016, Gamble supplemented the Amended § 2255 Motion, asserting additional non-<u>Johnson</u> grounds for relief. (ECF No. 12.) On November 6, 2017, the Court denied Gamble's Initial § 2255 Motion and directed the government to respond to Gamble's Amended § 2255 Motion. (ECF No. 15.) On January 17, 2018, the government responded to the Amended § 2255 Motion. (ECF No. 25.) On December 11, 2019, Gamble filed a further supplement to the Amended § 2255 Motion, in which he set out additional analysis of the grounds for relief stated in the Amended § 2255 Motion. (ECF No. 31.)

On August 26, 2019, Gamble filed the Motion to Amend. (ECF No. 30.) On December 11, 2019, Gamble supplemented the Motion to Amend with his proposed amended pleading. (ECF No. 32.) The government has not responded to the Motion to Amend.

## II. Legal Standards

### A. Section 2255

Pursuant to 28 U.S.C. § 2255(a):

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may

move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Short v. United States, 471 F.3d 686, 691 (6th Cir. 2006) (quotation marks and citation omitted). A prisoner must file his § 2255 motion within one year of the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

A § 2255 motion is not a substitute for a direct appeal. Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013). "[C]laims not raised on direct appeal," which are thus procedurally defaulted, "may not be raised on collateral review

unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)). Alternatively, a petitioner may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." Bousley v. United States, 523 U.S. 614, 622-23 (1998).

The procedural default rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of Strickland v. Washington. In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," . . . what is really being asserted is a violation of due process.

Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996) (citation omitted). To establish a claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel, "[f]irst, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In considering a claim of ineffective assistance, a court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (citation omitted) (quoting Strickland, 466 U.S. at 687, 689). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Humphress v. United States, 398 F.3d 855, 859 (6th Cir. 2005) (quoting Strickland, 466 U.S. at 694). "In assessing prejudice under Strickland, the question is not whether a court can be certain

counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111-12 (citations omitted).

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

Richter, 562 U.S. at 105 (citations omitted). Ultimately, "[c]ounsel [cannot] be unconstitutionally ineffective for failing to raise [] meritless arguments." Mapes v. Coyle, 171 F.3d 408, 427 (6th Cir. 1999).

### B. Motion to Amend

A motion to amend a § 2255 motion is governed by the Federal Rules of Civil Procedure. Clark v. United States, 764 F.3d 653,

661 (6th Cir. 2014).  Rule 15(a)(2) provides that a "court should freely give leave [to amend] when justice so requires."  Leave to amend may be denied, however, when amendment would be futile.  Beydoun v. Sessions, 871 F.3d 459, 469 (6th Cir. 2017); see also Oleson v. United States, 27 F. App'x 566, 568-71 (6th Cir. 2001) (affirming district court's denial of motion to amend § 2255 petition where the motion to amend was "futile").

**C.   The Guidelines' "Career Offender" Framework**

In his Amended § 2255 Motion, Gamble argues that his trial counsel was ineffective in failing to challenge the Court's determination that Gamble was a career offender under the Guidelines.  At sentencing, a federal court must consider the Guidelines' recommended sentencing range for the defendant.  United States v. Booker, 543 U.S. 220, 245 (2005).  Numerous factors inform the Guidelines' recommended sentencing range for an individual defendant, including, inter alia, the defendant's criminal history.  See U.S.S.G., ch. 4 ("Criminal History and Criminal Livelihood").[3]  The Guidelines recommend a sentencing enhancement for a defendant who is a "career offender."  See id. § 4B1.1.  A defendant is a career offender under the Guidelines if:

---

[3] All citations to the Guidelines are to the 2014 edition under which Gamble was sentenced.

(1) the defendant was at least eighteen years old at
            the time the defendant committed the instant
            offense of conviction;

        (2) the instant offense of conviction is a felony
            that is either a crime of violence or a controlled
            substance offense; and

        (3) the defendant has at least two prior felony
            convictions of either a crime of violence or a
            controlled substance offense.

Id. § 4B1.1(a).

    A "crime of violence" under the Guidelines is "any offense

under federal or state law, punishable by imprisonment for a

term exceeding one year, that . . . has as an element the use,

attempted use, or threatened use of physical force against the

person of another, or . . . is burglary of a dwelling, arson, or

extortion, involves use of explosives, or otherwise involves

conduct that presents a serious potential risk of physical injury

to another."  Id. § 4B1.2(a).  A "controlled substance offense"

under the Guidelines is "an offense under federal or state law,

punishable by imprisonment for a term exceeding one year, that

prohibits the manufacture, import, export, distribution, or

dispensing of a controlled substance (or a counterfeit substance)

or the possession of a controlled substance (or a counterfeit

substance) with intent to manufacture, import, export,

distribute, or dispense."  Id. § 4B1.2(b).

    When determining whether a defendant's instant and prior

criminal convictions are crimes of violence or controlled

substance offenses under the Guidelines, courts "apply a 'categorical' approach, looking to the statutory definition of the offense and not the particular facts underlying the conviction." United States v. Rede-Mendez, 680 F.3d 552, 556 (6th Cir. 2012) (citing Sykes v. United States, 131 S. Ct. 2267, 2272 (2011)). Under the categorical approach, a court must compare the elements of the statute under which the defendant was convicted with "the elements of the 'generic' crime -- i.e., the offense as commonly understood." Descamps v. United States, 570 U.S. 254, 257 (2013). The defendant's conviction will qualify as a crime of violence or controlled substance offense for purposes of the Guidelines' career offender sentencing enhancement only if the statute of conviction's elements are the same as, or narrower than, those of the generic offense. United States v. Brown, 195 F. Supp. 3d 926, 930 (E.D. Mich. 2016) (citing United States v. Ozier, 796 F.3d 597, 599-600 (6th Cir. 2015)); United States v. Montanez, 442 F.3d 485, 489 (6th Cir. 2006).

If a defendant's statute of conviction "comprises multiple, alternative versions of [a] crime" -- i.e., if it is "divisible" -- a court may use the "modified categorical approach" and "examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." Descamps, 570 U.S. at 261-62;

see also Shepard v. United States, 544 U.S. 13, 16-17 (2005).
"[T]hese so-called Shepard documents may including the 'charging
document, written plea agreement, transcript of plea colloquy,
and any explicit factual finding by the trial judge to which the
defendant assented.'" United States v. Denson, 728 F.3d 603,
608 (6th Cir. 2013) (quoting Shepard, 544 U.S. at 16). The
purpose of the modified categorical approach is to determine
"whether the court documents establish that the defendant
'necessarily admitted' the elements . . . of a predicate
offense." United States v. Davis, 751 F.3d 769, 775 (6th Cir.
2014) (quoting United States v. Medina-Almaguer, 559 F.3d 420,
423 (6th Cir. 2009)).

**III. Analysis**

    **A.   Timeliness**

A § 2255 motion and any amendments or supplements to it
must be filed within the one-year statute of limitations
established by 28 U.S.C. § 2255(f). See, e.g., Berry v. United
States, No. 2:14-cv-02070, 2017 WL 401269, at *10 (W.D. Tenn.
Jan. 30, 2017). Under § 2255(f)(1), the motion must be filed
within one year of "the date on which the judgment of conviction
becomes final." A conviction becomes final on conclusion of
direct review. Sanchez-Castellano v. United States, 358 F.3d
424, 426 (6th Cir. 2004). If the defendant takes a timely direct
appeal to the court of appeals, the judgment of conviction

12

becomes final after the ninety-day period to file a petition for writ of certiorari to the Supreme Court expires.  Id.  If the petitioner does not appeal, "the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed."  Id. at 427.

Courts may deem claims raised in untimely amendments or supplements to a § 2255 motion to have been filed on the date of the original § 2255 motion if the amendment or supplement "relates back" to the original § 2255 motion.  Berry, 2017 WL 401269, at *10 & n.50 (citing Fed. R. Civ. P. 15(c)); Mayle v. Felix, 545 U.S. 644, 655 (2005).  Under Rule 15(c), an amendment or supplement outside § 2255(f)'s one-year statute of limitations can relate back if the supplement "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading."  Fed. R. Civ. P. 15(c)(B).  "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." Mayle, 545 U.S. at 664.

A judgment was entered against Gamble on March 3, 2016. (Cr. ECF No. 792.)  Gamble did not appeal.  His conviction become final on March 17, 2016.  See Fed. R. App. P. 4(b).  He filed his Initial § 2255 Motion on June 28, 2016.  (ECF No. 1.)  He

filed his Amended § 2255 Motion on November 15, 2016, and supplemented it on December 1, 2016, less than a year after his conviction became final. (ECF Nos. 11-12.) Gamble's Amended § 2255 Motion and his supplement to the Amended § 2255 Motion are timely.

Gamble filed his Motion to Amend on August 26, 2019, and supplemented it with his proposed amended pleading on December 11, 2019. (ECF Nos. 30, 32.) Gamble further supplemented his Amended § 2255 Motion on December 11, 2019. (ECF No. 31.) Gamble's Motion to Amend, his supplement to the Motion to Amend, and his December 2019 supplement to the Amended § 2255 Motion were filed more than a year after Gamble's conviction became final. However, those filings relate back to December 1, 2016, the date on which Gamble filed his Amended § 2255 Motion.

Gamble's December 2019 supplement to the Amended § 2255 Motion raises arguments about counsel's alleged ineffectiveness in failing to file a notice of appeal and in failing to argue that the Court incorrectly classified Gamble as a career offender under the Guidelines. (See ECF No. 31 at 2-14.) Those arguments relate to claims arising from the same conduct, transaction, or occurrence set out in the Amended § 2255 Motion. Gamble's December 2019 supplement to the Amended § 2255 Motion (ECF No. 31) relates back to the Amended § 2255 Motion.

Gamble's August 26, 2019 Motion to Amend and his December 11, 2019 supplement to the Motion to Amend raise arguments about the Court's allegedly incorrect classification of Gamble as a career offender under the Guidelines. (See ECF Nos. 30, 32.) Those arguments relate to claims arising from the same conduct, transaction, or occurrence set out in the Amended § 2255 Motion. Gamble's August 26, 2019 Motion to Amend (ECF No. 30) and his December 11, 2019 supplement to the Motion to Amend (ECF No. 32) relate back to the Amended § 2255 Motion.

**B.  Amended § 2255 Motion**

In his Amended § 2255 Motion, Gamble presents six grounds for relief. (See ECF Nos. 11-1, 11-2, 11-3, 12.) Gamble argues that:

(1)  Counsel was ineffective in failing to file a notice of appeal. (ECF No. 11-1.)

(2)  Counsel was ineffective in failing to object to the Court's determination that Gamble's Tennessee aggravated assault conviction was a crime of violence under the Guidelines. (ECF No. 11-2.)

(3)  Counsel was ineffective in failing to object to the constitutionality of the standard conditions of supervised release. (ECF No. 11-3.)

(4)  Counsel was ineffective in failing to warn Gamble about the loss of Social Security benefits and federal food stamp benefits that could result from his conviction. (ECF No. 12 at 2.)

(5)  Counsel was ineffective in failing to object to the Court's determination that Gamble's instant offense and his prior Tennessee conviction for possession of cocaine with intent to manufacture, sell, or deliver were controlled substance

offenses under the Guidelines.[4] (ECF No. 12 at 3; ECF No. 31 at 10-14.)

(6) Gamble's due process rights were violated when he was sentenced as a career offender under the Guidelines. (ECF No. 12 at 4.)

Each of the six grounds for relief in Gamble's Amended § 2255 Motion lacks merit.

### 1. Ground 1

Gamble alleges that his trial counsel, Lauren Pasley, "was ineffective in failing to file [a] notice of appeal." (ECF No. 11-1.) He asserts that Pasley "never consulted with me concerning an appeal," and that, "[h]ad she done so[,] I would have instructed her to [file] said notice on my behalf." (ECF No. 11-4 at 2.) Gamble does not allege that he affirmatively instructed Pasley to file a notice of appeal.

The Court assumes that Pasley did not consult with Gamble about whether to appeal his guilty plea or sentence. In this context, "the term 'consult' [] convey[s] a specific meaning -- advising the defendant about the advantages and disadvantages of

---

[4] It is not clear whether Gamble means to challenge the Court's determination that (1) his instant offense constituted a controlled substance offense under the Guidelines, (2) his predicate Tennessee controlled substance offense constituted a controlled substance offense under the Guidelines, or (3) both. Gamble's Amended § 2255 Motion discusses his instant offense; the government's response discusses Gamble's predicate Tennessee controlled substance offense; and Gamble's recent supplement to the Amended § 2255 Motion discusses his predicate Tennessee controlled substance offense. (See ECF No. 12 at 3; ECF No. 25 at 13-15; ECF No. 31 at 10-14.) The Court addresses both issues.

taking an appeal, and making a reasonable effort to discover the defendant's wishes." Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000). "Where the attorney has not consulted with the defendant, the attorney's failure to do so may itself constitute deficient performance [under the Sixth Amendment]." Richards v. United States, 301 F. App'x 454, 457 (6th Cir. 2008) (citing Flores-Ortega, 528 U.S. at 478). "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. When "there [are] no nonfrivolous grounds for appeal," counsel "would not [think] a rational defendant would want to appeal." Richards, 301 F. App'x at 457 (citing Flores-Ortega, 528 U.S. at 480).

When determining whether counsel had a constitutionally imposed duty to consult, "courts must take into account all the information counsel knew or should have known." Flores-Ortega, 528 U.S. at 480 (citing Strickland, 466 U.S. at 690). "[A] highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues

and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. "[W]hen the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." Id.

A rational defendant would not have wanted to appeal Gamble's guilty plea or sentence. Gamble received the sentence bargained for. His plea agreement provided that the government would recommend that Gamble receive an acceptance-of-responsibility adjustment and that he be sentenced at the low end of the applicable Guidelines range. (Cr. ECF No. 460 at 1-2.) At sentencing, Gamble received the benefit of a three-point acceptance-of-responsibility adjustment and a sentence of 151 months, at the low end of his recommended Guidelines range of 151-188 months. (See Cr. ECF No. 790; PSR ¶¶ 32-34, 90.) Gamble waived his appeal rights. His plea agreement provided that Gamble "understands that by pleading guilty, he gives up the right to appeal the conviction," and that, "[b]ased on concessions made in this plea agreement by the United States, [Gamble] [] hereby waives his rights to appeal his sentence, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the Court establishes at sentencing." (Cr. ECF No. 460 at

3.)  Gamble's sentence did not exceed the statutory maximum of 20 years.  See 21 U.S.C. § 846; 21 U.S.C. § 841(b)(1)(C).  His sentence was not the result of an upward departure.

Even if Gamble had not waived his appeal rights, the grounds for appeal he raises are frivolous.  Gamble argues that a rational defendant would have wanted to appeal his sentence because the "Court erroneously applied [the career] offender guidelines."  (ECF No. 31 at 3-4.)  As discussed infra, at the time of Gamble's sentencing, the Court's determination that Gamble qualified as a career offender under the Guidelines was clearly correct.  See Strickland, 466 U.S. at 689 (noting that a court should assess counsel's performance "from counsel's perspective at the time").  Gamble argues that a rational defendant would have wanted to appeal "the district court's denial of a three level adjustment to the base level calculation of his sentence."  (ECF No. 31 at 4.)  The PSR -- which the Court adopted without objection -- makes clear that Gamble did in fact receive the benefit of a three-level acceptance-of-responsibility adjustment.  (PSR ¶¶ 32-34, 90; see also Cr. ECF No. 790.)

Gamble also does not credibly allege that he "reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480.  Gamble conclusorily alleges that he "showed an interest [in appealing]," but does not assert

that he took any specific actions to demonstrate his interest. (ECF No. 31 at 3.)  In an affidavit attached to the government's response to Gamble's Amended § 2255 Motion, his trial counsel asserts that "Mr. Gamble did not request an appeal on this case" and "was reminded [at sentencing] that his agreement with the Government stated that he had waived his right to appeal."  (ECF No. 25-1 ¶ 6.)

Given Gamble's guilty plea, his waiver of appeal rights, his bargained-for sentence, and his lack of nonfrivolous grounds for appeal, Pasley's failure to consult with Gamble about his appeal rights did not "f[all] below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.

### 2.   Ground 2

Gamble alleges that Pasley was ineffective in failing to object to the Court's determination that Gamble's Tennessee aggravated assault conviction was a crime of violence under the Guidelines.  (ECF No. 11-2.)  He asserts that, "had counsel objected[,] petitioner would not have been designated a career offender and his guideline sentencing range would have been different."  (Id.)

At sentencing, the Court determined that Gamble was a career offender under the Guidelines based on two qualifying convictions, including a 2011 Tennessee conviction for aggravated assault that constituted a crime of violence under

U.S.S.G. § 4B1.2(a). (See Cr. ECF No. 790; PSR ¶ 51.) The Court's determination was correct. Gamble was convicted under section 39-13-102 of the Tennessee Code, which prohibits both intentional or knowing aggravated assault and reckless aggravated assault. See Tenn. Code Ann. § 39-13-102(a)(1)(A) (prohibiting intentional or knowing aggravated assault); id. at § 39-13-102(a)(1)(B) (prohibiting reckless aggravated assault). At the time of Gamble's sentencing in March 2016, controlling Sixth Circuit precedent held that reckless aggravated assault did not constitute a crime of violence under the Guidelines and that, because section 39-13-102 prohibited both knowing and reckless aggravated assault, a violation of section 39-13-102 "does not categorically qualify as a crime of violence." United States v. Cooper, 739 F.3d 873, 879 (6th Cir. 2014); see also United States v. McMurray, 653 F.3d 367, 373-82 (6th Cir. 2011), abrogated by United States v. Harper, 875 F.3d 329 (6th Cir. 2017).

This does not help Gamble. At the time of Gamble's sentencing, controlling Sixth Circuit precedent also held that section 39-13-102 was divisible -- one subsection of the statute prohibited intentional or knowing aggravated assault, while a separate subsection prohibited reckless aggravated assault. See Cooper, 739 F.3d at 880 n.2 (noting that "§ 39-13-102 is divisible"). A conviction for intentional or knowing aggravated

assault under section 39-13-102 is a crime of violence under the Guidelines. Id. at 882. When a statute is divisible, courts apply the modified categorical approach and consult the defendant's Shepard documents to determine the subsection of the statute under which the defendant was convicted. See Descamps, 570 U.S. at 262.

The Shepard documents from Gamble's Tennessee proceeding for aggravated assault demonstrate that he was convicted of intentional or knowing aggravated assault under section 39-13-102. (See ECF Nos. 7-1, 7-2.) His indictment states that he "did unlawfully and knowingly commit an assault on [victim] and use or display a deadly weapon and cause the said [victim] to reasonably fear imminent bodily injury, in violation of T.C.A. 39-13-102." (ECF No. 7-1.) Gamble's judgment states he was convicted of a Class C felony under section 39-13-102. (ECF No. 7-2.) Intentional or knowing aggravated assault is a Class C felony under section 39-13-102. Reckless aggravated assault is a Class D felony under the same statute. See Tenn. Code Ann. § 39-13-102(e)(1)(A); see also Cooper, 739 F.3d at 881-82 (defendant necessarily pled guilty to intentional or knowing aggravated assault under section 39-13-102 where his "state-court judgment confirm[ed] that [he] pleaded guilty to a Class C felony"); Ballinger v. United States, No. 17-5261, 2017 WL 8180569, at *2 (6th Cir. Dec. 14, 2017) (noting that defendant's

"judgments of conviction indicate[d] that the convictions were Class C felonies" and that, "because [defendant's] convictions were Class C felonies of intentional, rather than reckless, aggravated assault, he was necessarily convicted" of the knowing/intentional variant of aggravated assault under section 39-13-102).

The Shepard documents establish that Gamble's 2011 Tennessee aggravated assault conviction was for intentional or knowing aggravated assault and is a crime of violence under U.S.S.G. § 4B1.2(a). See Cooper, 739 F.3d at 881-82 (conviction for intentional or knowing aggravated assault under section 39-13-102 was a crime of violence under the Guidelines); Ballinger, 2017 WL 8180569, at *2 (same).

Because, under clearly established law, Gamble's 2011 Tennessee aggravated assault conviction was a crime of violence under the Guidelines at the time of Gamble's sentencing, Pasley's decision not to contest that finding did not "f[all] below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel cannot be faulted for "failing to raise [a] meritless argument[]." Mapes, 171 F.3d at 427.

### 3. Ground 3

Gamble alleges that Pasley was ineffective in failing to object to the constitutionality of the standard conditions of supervised release. (ECF No. 11-3.) He asserts that, "had

counsel objected[,] [he] would not have been privy to the unconstitutional standard conditions." (Id.)

The Court sentenced Gamble to 151 months in prison and 3 years of supervised release. (Cr. ECF No. 792 at 2-3.) The Court imposed a standard set of supervised release conditions and four special conditions. (Id. at 3-4.) Some of the standard conditions the Court imposed -- i.e., that "the defendant shall not commit another federal, state or local crime" -- are statutorily mandated. See 18 U.S.C. § 3583(d). Others -- i.e., that "the defendant shall not leave the judicial district without the permission of the court or probation officer" -- are conditions that a court may impose at its discretion, provided the conditions: (1) are reasonably related to certain sentencing factors set out in 18 U.S.C. § 3553(a); (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in 18 U.S.C. § 3553(a); and (3) are consistent with Sentencing Commission policy statements. See id. (citing 18 U.S.C. § 3563(b)); see also U.S.S.G. § 5D1.3(c) (policy statement outlining the Sentencing Commission's recommended standard conditions of supervised release).

"[S]upervised release conditions . . . [are subject to] the prohibition against vague laws embedded in the Fifth Amendment's Due Process Clause." United States v. Shultz, 733 F.3d 616, 622 (6th Cir. 2013). At the time of Gamble's sentencing, the U.S.

Court of Appeals for the Seventh Circuit had held that several standard conditions of supervised release are problematically vague.  See, e.g., United States v. Kappes, 782 F.3d 828, 848-50 (7th Cir. 2015) (holding that standard conditions of supervised release requiring defendant to refrain from "associat[ing] with any persons engaged in criminal activity" and to "refrain from excessive use of alcohol" were "fatally vague").  The Sixth Circuit had not, however, held or suggested that any of the standard conditions of supervised release were unconstitutional, and had stated that "[c]ourts would do well to show restraint in entertaining facial challenges to conditions of supervised release."  Shultz, 733 F.3d at 624.  The Sixth Circuit has subsequently -- in an unpublished opinion -- held that one of the standard conditions of supervised release is unconstitutionally vague.  See United States v. Sexton, 719 F. App'x 483, 484-85 (6th Cir. 2017) (holding that the standard condition of supervised release requiring a defendant to "notify third parties of risks that may be occasioned by [his] criminal record or personal history or characteristics" is "overly vague").

At the time of Gamble's sentencing, the law governing the constitutionality of the standard conditions of supervised release was in flux.  Gamble's counsel could have colorably argued, relying on precedents from other jurisdictions, that

25

some of the standard conditions were unconstitutional. Her choice not to, however, does not constitute deficient performance under Strickland. "Strickland's performance standard does not require an attorney to raise every non-frivolous issue on appeal." Harper v. United States, No. 18-1202, 2019 WL 6321329, at *4 (6th Cir. Nov. 26, 2019) (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)). When the law is in a "curious state," counsel cannot be faulted for declining to press an argument that would stand on uncertain ground. See Lucas v. O'Dea, 179 F.3d 412, 419-20 (6th Cir. 1999) (counsel is not typically required under Strickland to "anticipate a development in the law," and is not ineffective in declining to object to a sentence enhancement about which the law at the time of sentencing was "in a curious state") (quotation marks and citation omitted); see also Bullard v. United States, 937 F.3d 654, 663 (6th Cir. 2019) (holding that "it was reasonable for [] trial counsel not to object" to the trial court's sentencing determination given "such uncertainty in the caselaw"). Pasley's decision not to contest the constitutionality of the standard conditions of supervised release did not "f[all] below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

Pasley's decision not to contest the constitutionality of the standard conditions of supervised release did not prejudice Gamble. See Strickland, 466 U.S. at 687 (a defendant arguing

that counsel provided constitutionally ineffective assistance must show that "the deficient performance prejudiced the defense"). A defendant may contest his conditions of supervised release and the Court may modify those conditions "at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2); see also United States v. Romer, Nos. 18-2113, 18-2239, 2019 WL 6492502, at *5 (6th Cir. Dec. 3, 2019) (declining to invalidate a condition of supervised release on direct appeal and noting that, "to the extent [defendant] later believes that probation is being too restrictive in its interpretation of this provision, 'he may petition the court to modify [or] reduce . . . the condition[] of supervised release'") (quoting United States v. Arnold, 549 F. App'x 491, 498 (6th Cir. 2013)); United States v. Bostic, No. 17-cv-1645, 2018 WL 439316, at *6 (N.D. Ill. Jan. 16, 2018) (counsel's decision not to challenge the constitutionality of defendant's conditions of supervised release at sentencing did not prejudice defendant under Strickland because "none of the contested conditions of supervised release have yet gone into effect" and "a district court may modify a defendant's supervised release conditions 'at any time' under 18 U.S.C. § 3583(e)(2)"). Gamble is free to file a motion to modify the conditions of his supervised release, which have not gone into effect. Pasley's

decision not to contest those conditions at sentencing did not constitute ineffective assistance of counsel.

### 4. Ground 4

Gamble alleges that Pasley was ineffective in failing to warn Gamble about the loss of Social Security benefits and federal food stamp benefits that could result from his conviction. (ECF No. 12 at 2.) He asserts that, "had trial counsel explained beforehand the direct consequences associated with said conviction[,] he would not have pled guilty but [would have] refused to endorse the plea agreement and its terms and instead insisted on going to trial." (Id.)

Gamble cites no authority supporting his assertion that counsel's failure to warn a defendant about a potential loss of federal benefits could constitute constitutionally ineffective assistance. In Padilla, the Supreme Court held that counsel's failure to advise a defendant that a guilty plea would result in his deportation constituted constitutionally ineffective assistance. 559 U.S. at 367-74. The Supreme Court noted deportation's "close connection to the criminal process" and opined that it is "uniquely difficult to classify as either a direct or a collateral consequence [of conviction]." Id. at 366. "Notably, since Padilla, neither the Supreme Court nor the Sixth Circuit has extended its holding to any collateral issue other than deportation." United States v. Sawaf, Nos. 01-cr-47,

28

15-cv-170, 2017 WL 9486187, at *7 (E.D. Ky. Aug. 7, 2017), adopted by 2018 WL 287864 (E.D. Ky. Jan. 4, 2018); see also id. at *6-7 (declining to extend Padilla to counsel's failure to inform defendant of a potential loss of Social Security benefits and noting that this "is a matter that falls outside the scope of the Sixth Amendment"); Parrino v. United States, 655 F. App'x 399, 403 (6th Cir. 2016) (declining to extend Padilla to counsel's failure to inform defendant of loss of ability to participate in federal healthcare programs); United States v. Nelson, No. 1:08-cr-068, 2011 WL 883999, at *2-3 (S.D. Ohio Jan. 5, 2011), adopted by 2011 WL 883973 (S.D. Ohio Mar. 10, 2011) (declining to extend Padilla to counsel's failure to inform defendant that he would be "prohibited from receiving federal benefits") (quotation marks omitted). Pasley's alleged failure to inform Gamble of a potential loss of Social Security benefits and federal food stamp benefits does not give rise to a cognizable claim of ineffective assistance of counsel under the Sixth Amendment.

Gamble has not demonstrated that Pasley's alleged failure to warn him of a potential loss of Social Security benefits and federal food stamp benefits prejudiced him. To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at

694.  "The likelihood of a different result must be substantial, not just conceivable."  Richter, 562 U.S. at 112.

The record demonstrates that Gamble was informed of the potential loss of benefits.  The PSR stated that Gamble might be ineligible for federal benefits as a result of his guilty plea. (PSR ¶¶ 103-04.)  At his sentencing hearing, Gamble answered affirmatively when the Court asked whether he had reviewed his PSR.  (Cr. ECF No. 930 at 3.)  In the affidavit attached to the government's response to Gamble's Amended § 2255 Motion, Gamble's trial counsel submits that "Mr. Gamble was also fully aware that he would lose benefits upon pleading guilty in federal court" and that "[t]his was understood upon reviewing the Presentence Report before the sentencing hearing." (ECF No. 25-1 ¶ 7.)  Gamble has not demonstrated a substantial likelihood that he would have proceeded to trial to avoid foregoing Social Security benefits or federal food stamp benefits.  Richter, 562 U.S. at 112.

### 5.  Ground 5

Gamble alleges that Pasley was ineffective in failing to object to the Court's determination that Gamble's instant offense under 21 U.S.C. § 846 and his prior 2005 Tennessee conviction for possession of cocaine with intent to manufacture, sell, or deliver were controlled substance offenses under the Guidelines. (ECF No. 12 at 3; ECF No. 31 at 10-14.)  He asserts that, "had

counsel objected[,] [he] would not have been sentenced as a career offender and his guideline range would have been lower." (ECF No. 12 at 3.)

At sentencing, the Court determined that Gamble was a career offender under the Guidelines because (1) Gamble's instant offense under 21 U.S.C. § 846 constituted a controlled substance offense under U.S.S.G. § 4B1.2(b); and (2) Gamble had two qualifying convictions, including a 2005 Tennessee conviction for possession of cocaine with intent to manufacture, sell, or deliver that constituted a controlled substance offense under U.S.S.G. § 4B1.2(b). (See Cr. ECF No. 790; see also PSR ¶¶ 31, 40.) The Court's determinations were correct.

Gamble's instant offense was conspiracy to possess with intent to distribute, and to distribute, cocaine, in violation of 21 U.S.C. § 846. (Cr. ECF No. 303 ¶¶ 1, 19.) At the time of Gamble's sentencing, the Sixth Circuit had repeatedly recognized that a conspiracy conviction under § 846 constitutes a controlled substance offense under the Guidelines. See United States v. Williams, 53 F.3d 769, 772 (6th Cir. 1995) ("[W]e hold that that the Sentencing Commission did not exceed its statutory authority by including conspiracy within the definition of a 'controlled substance offense' under the career offender guidelines. Accordingly, the district court did not err in determining that a conspiracy to possess cocaine with intent to distribute may be

used to classify defendant as a career offender."); see also

United States v. Sanbria-Bueno, 549 F. App'x 434, 439 (6th Cir.

2013) (noting that the Sixth Circuit "treat[s] § 846 conspiracy

offenses as 'controlled substance offenses' under § 4B1.2")

(citing Williams, 53 F.3d at 770-71); United States v. Black, 4

F. App'x 280, 281 (6th Cir. 2001) ("For purposes of the career

offender guideline, conspiracy to commit a crime is given the

same status as the underlying crime.") (citing U.S.S.G. § 4B1.2,

cmt. n.1). Pasley's decision not to object to the Court's

determination that Gamble's instant offense under 21 U.S.C. § 846

was a controlled substance offense under the Guidelines did not

"f[all] below an objective standard of reasonableness."

Strickland, 466 U.S. at 688. That argument would have been

meritless. See Mapes, 171 F.3d at 427.

In 2005, Gamble was convicted of possession of cocaine with

intent to manufacture, sell, or deliver under Tenn. Code Ann.

§ 39-17-417.[5] At the time of Gamble's sentencing, the Sixth

Circuit had repeatedly recognized that a conviction for

possession with intent to manufacture, sell, or deliver under

---

[5] The government represents that Tenn. Code Ann. § 39-17-417 was the
statute of conviction for Gamble's 2005 Tennessee conviction, but
attaches no supporting documentation. (See ECF No. 25 at 15.)
Gamble does not contest the point. He characterizes his 2005
Tennessee conviction as a "conviction in the State of Tennessee for
possession with intent to distribute C.D.S." (ECF No. 31 at 10.)
In his Motion to Amend, Gamble submits that this conviction was
under "§ 39-17-417." (ECF No. 32 at 3-5.)

section 39-17-417 constituted a controlled substance offense under U.S.S.G. § 4B1.2(b). See United States v. Douglas, 563 F. App'x 371, 378 (6th Cir. 2014) (collecting cases and noting that "we have always treated a violation of § 39-17-417 as a categorical controlled substance offense [under the Guidelines]"). Pasley's decision not to object to the Court's determination that Gamble's 2005 Tennessee conviction for possession of cocaine with intent to manufacture, sell, or deliver was a controlled substance offense under the Guidelines did not "f[all] below an objective standard of reasonableness." Strickland, 466 U.S. at 688. That argument would have been meritless. See Mapes, 171 F.3d at 427.

### 6. Ground 6

Gamble alleges that his "constitutional right to due process of law was violated when he was sentenced with the career offender enhancement. Categorically[,] petitioner is not a career offender because both his predicate offenses and his instant offense are not qualifiers." (ECF No. 12 at 4.)

Gamble's due process argument lacks merit. As discussed above, the Court correctly determined that Gamble was a career offender under the Guidelines based on his instant controlled substance offense and his two predicate convictions. Even if the Court had erred in finding that Gamble was a career offender, Gamble has not shown how the Court's alleged errors resulted in

"a 'fundamental defect' in the proceedings which necessarily result[ed] in a complete miscarriage of justice or an egregious error violative of due process." Gall v. United States, 21 F.3d 107, 109 (6th Cir. 1994); see also Jones v. United States, 56 F.3d 64 (6th Cir. 1995) (unpublished table opinion) (noting that "[r]elief is appropriate on [a] nonconstitutional claim under the sentencing guidelines only if the record reflects an egregious error that violates due process or a fundamental defect resulting in a complete miscarriage of justice") (citing Gall, 21 F.3d at 109).

Gamble's due process argument is also procedurally defaulted. "Sentencing challenges generally cannot be made for the first time in a post-conviction § 2255 motion." Weinberger v. United States, 268 F.3d 346, 351 (6th Cir. 2001) (citing Grant v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996)). The petitioner must "[n]ormally" make such objections "on direct appeal or they are waived." Id. "[M]istakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver." Grant, 72 F.3d at 506. "[C]ollateral relief from [such] a defaulted claim of error is appropriate only where there has been fundamental unfairness, or what amounts to a breakdown of the trial process." Id. (citing Reed v. Farley, 114 S. Ct. 2291, 2300 (1994)). A petitioner seeking to bring a defaulted sentencing challenge in a § 2255

motion must demonstrate "a violation of due process" that is "so positively outrageous as to indicate a 'complete miscarriage of justice.'" <u>Id.</u>

Gamble did not appeal his sentence. His due process claim is waived. Gamble does not attempt to explain how the Court's determination that he was a career offender under the Guidelines resulted in a "complete miscarriage of justice." <u>See, e.g.</u>, <u>Futrell v. United States</u>, Nos. 1:15-cv-01041, 1:12-cr-10131, 2017 WL 6065271, at *1-3 (W.D. Tenn. Dec. 7, 2017) (denying petitioner's § 2255 due process claim where petitioner did not raise the claim on direct appeal and "ha[d] not shown, or even tried to explain, how the alleged misapplication of the advisory guidelines denied him due process"). Gamble waived his due process claim by not raising it on direct appeal and has demonstrated no basis on which the Court might excuse that waiver.

C. **Motion to Amend**

Gamble has filed a Motion to Amend his Amended § 2255 Motion. (ECF Nos. 30, 32.) In his proposed amended pleading, Gamble argues that, given the Sixth Circuit's recent en banc decision in <u>United States v. Havis</u>, 927 F.3d 382 (6th Cir. 2019), his 2005 Tennessee conviction for possession of cocaine with intent to manufacture, sell, or deliver "no longer [is] a

qualifying predicate offense" for purposes of the Guidelines'
career offender enhancement. (See ECF No. 32 at 1, 4-8.)

In Havis, an en banc panel of the Sixth Circuit held that
"attempt crimes do not qualify as controlled substance offenses"
under the Guidelines. 927 F.3d at 387. The text of the
definition of "controlled substance offense" in U.S.S.G.
§ 4B1.2(b) does not mention attempt crimes, but the Application
Notes to § 4B1.2(b) provide that a "controlled substance offense
. . . include[s] the offenses of aiding and abetting, conspiring,
and attempting to commit such offenses." U.S.S.G. § 4B1.2, cmt.
n.1. A prior Sixth Circuit panel, relying on the Application
Notes to U.S.S.G. § 4B1.2(b), held that the Guidelines'
definition of "controlled substance offense" encompassed attempt
crimes. See United States v. Evans, 699 F.3d 858, 866-67 (6th
Cir. 2012). In Havis, the en banc panel abrogated Evans and
held that "the Sentencing Commission has no power to add attempt
crimes to the list of offenses in § 4B1.2(b) through commentary."
927 F.3d at 384.

In the wake of Havis, a conviction under Tenn. Code Ann.
§ 39-17-417 -- the statute of conviction for Gamble's 2005
Tennessee conviction for possession of cocaine with intent to
manufacture, sell, or deliver -- is no longer a categorical
controlled substance offense under U.S.S.G. § 4B1.2(b). See
Havis, 927 F.3d at 384, 387. Subsection (a)(2) of § 39-17-417

36

prohibits the "delivery" of a controlled substance, including the "attempted transfer" of a controlled substance. See id. (noting that "the least culpable conduct covered by § 39-17-417 is attempted delivery of a controlled substance" although "[t]he Guidelines' definition of 'controlled substance offense' does not include attempt crimes"). Because subsection (a)(2) of the statute prohibits "attempt" conduct, the Court held in Havis that § 39-17-417 is overbroad under the categorical approach. See id.

Tenn. Code Ann. § 39-17-417 is divisible. United States v. Goldston, 906 F.3d 390, 394 (6th Cir. 2018) (noting that § 39-17-417 "constitutes a 'divisible statute'") (quoting Descamps, 570 U.S. at 257). Gamble's predicate controlled substance conviction was for possession of cocaine with intent to manufacture, sell, or deliver, and is governed by subsection (a)(4) of § 39-17-417, rather than subsection (a)(2). See Tenn. Code Ann. § 39-17-417(a)(4) (prohibiting "possess[ion] [of] a controlled substance with intent to manufacture, deliver or sell the controlled substance"). Subsection (a)(4) does not criminalize attempted possession of a controlled substance and is not overbroad under the categorical approach. See Whyte v. United States, No. 3:16-cv-02622, 2019 WL 2524095, at *7 n.4 (M.D. Tenn. June 19, 2019) (noting that subsection (a)(4) of § 39-17-417 is "divisible from the remainder of the statute" and

37

that "Tennessee law does not appear to define 'possession' to encompass 'attempt to possess'"). Without the Shepard documents explaining Gamble's 2005 Tennessee controlled substance conviction, which no party has submitted, the Court cannot ultimately determine under which subsection of § 39-17-417 Gamble was convicted or whether, under Havis, his conviction would continue to qualify as a controlled substance offense under the Guidelines.

The Court need not evaluate the merits of Gamble's Havis argument. To allow Gamble to submit his proposed amended pleading would be futile because the argument he seeks to make does not give rise to a cognizable § 2255 claim. Gamble's proposed pleading would allege that, following Havis, the Court's determination that Gamble was a career offender retroactively constitutes an erroneous application of the Guidelines. (See ECF Nos. 30, 32.) That is a non-constitutional claim of error. Non-constitutional errors "ordinarily are not cognizable on collateral review" under § 2255. United States v. Cofield, 233 F.3d 405, 407 (6th Cir. 2000) (quoting Grant, 72 F.3d at 506). A non-constitutional error will give rise to a cognizable § 2255 claim "only if [the error] involved 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Snider v. United States, 908 F.3d 183, 189 (6th Cir. 2018) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)). "To

meet this demanding standard, a prisoner typically must 'prove that he is either actually innocent of his crime or that a prior conviction used to enhance his sentence has been vacated.'" Bullard, 937 F.3d at 658 (quoting Spencer v. United States, 773 F.3d 1132, 1339 (11th Cir. 2014) (en banc)).

Recent Sixth Circuit cases have addressed situations similar to Gamble's. In Snider, the Sixth Circuit held that a petitioner's "non-constitutional challenge to his advisory guidelines range . . . [was] not cognizable under § 2255."[6] 908 F.3d at 189. Because the Guidelines are advisory, judges must consult the Guidelines' recommended sentencing ranges but are free to depart from the Guidelines' recommendations based on the sentencing factors in 18 U.S.C. § 3553(a). See id. at 190-91. When there is "an intervening change in the law" that "render[s] [a petitioner's] career offender designation erroneous," the petitioner's resulting "misapplication-of-an-advisory-guidelines-range claim" challenges "'only [] the legal process

---

[6] The Snider panel noted that, "although not without dissent, every other court of appeals to have looked at the issue has agreed that a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations." 908 F.3d at 191-92 (collecting cases). The decisions issued by other circuits as to this issue have been "extremely close and deeply divided." Id. at 192 (quoting United States v. Foote, 784 F.3d 931, 939 (4th Cir. 2015)). Snider was issued over a strong dissent, which argued that "there are instances in which, despite being sentenced under the advisory guidelines, a defendant who has been incorrectly designated as a career offender may still bring a claim under § 2255." Snider, 908 F.3d at 193-200 (Moore, J., dissenting).

used to sentence a defendant and does not raise an argument that the defendant is ineligible for the sentence she received.'" Id. at 191 (quoting Gibbs v. United States, 655 F.3d 473, 479 (6th Cir. 2011)).

In Bullard, the Sixth Circuit rejected a petitioner's § 2255 claim in which he argued that, under Havis, his predicate conviction under an Arizona controlled substance statute that prohibits "attempt" conduct was no longer a controlled substance offense under the Guidelines. 937 F.3d at 656-57, 660-61. The Bullard panel noted that the petitioner "would not be a career offender under the Guidelines" if he "received his sentence today," but held that the defendant's argument that "the district court misclassified him as a career offender" did not present "a cognizable claim on collateral review." Id. at 657 (citing Snider, 908 F.3d at 189-91). The Court reiterated Snider's holding that "'[a] misapplication-of-an-advisory-guidelines claim is . . . not cognizable under § 2255.'" Id. at 660 (quoting Snider, 908 F.3d at 191).

Snider and Bullard control here. Gamble does not allege that he is actually innocent of his 2005 Tennessee controlled substance offense. His sentence has not been vacated. See Bullard, 937 F.3d at 658 (noting that a petitioner can assert a cognizable claim of non-constitutional error under § 2255 by showing that "he is either actually innocent of his crime or

40

that a prior conviction used to enhance his sentence has been vacated"). Gamble alleges that <u>Havis</u> is an intervening change in law that invalidates the Court's prior determination that he qualified as a career offender under the Guidelines. (<u>See</u> ECF Nos. 30, 32.) As discussed above, Gamble might have a meritorious argument that, if sentenced <u>now</u>, he would not qualify as a career offender under the Guidelines. Even if so, he cannot raise a cognizable § 2255 claim by arguing that <u>Havis</u> retroactively invalidates the Court's application of the advisory Guidelines at his sentencing. That is because the Guidelines are advisory. As the <u>Bullard</u> panel explained:

> [T]he Guidelines are just meant to <u>guide</u> the district court to the proper sentence. But the district court is free to vary from the Guidelines -- and can impose a sentence at, below, or above the Guidelines. . . . This discretion confirms the absence of any 'miscarriage of justice' in Guidelines calculations: a district court can lawfully impose the same sentence with or without the career offender designation.

937 F.3d at 659 (quotation marks and citations omitted). "<u>Havis</u> provides no relief on collateral review." <u>Id.</u> at 657. Gamble's proposed amended pleading is futile. <u>See</u> <u>Beydoun</u>, 871 F.3d at 469. Gamble's Motion to Amend is DENIED.

## IV. Appeal

Under 28 U.S.C. § 2253, a district court must evaluate the appealability of its decision denying a § 2255 motion. The court should issue a certificate of appealability ("COA") "only if the

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2)-(3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quotation marks and citation omitted); see also Henley v. Bell, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam). A COA does not require a showing that the appeal will succeed. Miller-El, 537 U.S. at 337; Caldwell v. Lewis, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. Bradley v. Birkett, 156 F. App'x 771, 773 (6th Cir. 2005).

The claims raised in Gamble's Amended § 2255 Motion and Motion to Amend do not merit further review. Gamble cannot present a question of some substance about which reasonable jurists could differ. The Court DENIES a certificate of appealability on all grounds for relief stated in Gamble's Amended § 2255 Motion and Motion to Amend.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). To appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, a prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Id. at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). Rule 24(a) also provides, however, that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that an appeal addressing any of the claims in Gamble's Amended § 2255 Motion or Motion to Amend would not be taken in good faith. Leave to appeal in forma pauperis is DENIED.[7]

---

[7] If Gamble files a notice of appeal, he must pay the appellate filing fee or file a motion to proceed in forma pauperis and

## V.    Conclusion

For the foregoing reasons, Gamble's Amended § 2255 Motion is DENIED.  Gamble's Motion to Amend is DENIED.


So ordered this 29th day of January, 2020.

/s/ *Samuel H. Mays, Jr.*

Samuel H. Mays, Jr.
UNITED STATES DISTRICT JUDGE

---

supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.